UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FRANK INMAN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   2:15-cv-00080-JAW |
| | ) |
| WENDY RIEBE, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Frank Inman alleges that Defendants Wendy Riebe, Dr. Robert Clinton, and Dr. George Stockwell were deliberately indifferent to his serious medical needs while he was incarcerated at the Maine Correctional Center.

The matter is before the Court on Defendants' Motion for Summary Judgment, through which motion Defendants assert that the record cannot support a finding of deliberate indifference. (ECF No. 87.) Plaintiff did not file an opposition to the motion.

Following a review of the pleadings and the summary judgment filings, I recommend the Court grant Defendants' motion.

**FACTS**

In his complaint, Plaintiff alleged Defendant Wendy Riebe, Health Services Administrator for Correct Care Services, failed to follow through on an agreement to secure a pair of eyeglasses for Plaintiff from Plaintiff's "regular eye doctor." (Complaint at 3, ECF No. 1.) According to Plaintiff, at the time his glasses were broken. *Id.* In addition to the claim against Defendant Riebe, Plaintiff alleged that although the physicians who oversee medical care at the Correctional Center, Defendants Clinton and Stockwell, understood that Plaintiff had "medical issues," specifically

migraines, pain from a prior back injury, and a positive test result for Huntington's disease, they refused to treat Plaintiff for the issues. (*Id.* at 4.) Plaintiff signed his complaint using the statutory alternative for the oath. (*Id.* at 3.)

After Plaintiff's complaint was docketed, Plaintiff sent miscellaneous correspondence to the Court in which he described certain post-filing events at the Correctional Center and enclosed articles related to Huntington's disease. None of the subsequent filings was sworn or bore any other indicia of evidentiary quality.[1] Other than Plaintiff's complaint allegations, therefore, the summary judgment facts of record consist of the uncontested facts set forth in Defendants' Statement of Material Facts (ECF No. 88-1), which facts are set forth, in material part, below.[2]

---

[1] Plaintiff signed some of his letters below a declaration to the effect that "the foregoing is true to the best of my knowledge" and "sent under good faith of the law." This language does not substantially conform to the statutory alternative to the oath, which requires a statement made under penalty of perjury. *See* 28 U.S.C. § 1746 (permitting "unsworn declarations under penalty of perjury" to have "like force and effect" as sworn statements). In one such letter, Plaintiff asserted that Defendants informed him that he would not receive any treatment for Huntington's disease and that the lack of treatment would give Plaintiff "a reason not to come back." (ECF No. 24.) In another letter (an objection to the Recommended Decision on Defendants' Motion to Dismiss), Plaintiff asserted that his prison-issued glasses were unusable and that he was deprived of glasses for seven months, causing worsened eyesight, frequent migraines, and increased sensitivity to light. (ECF No. 29.)

[2] For purposes of summary judgment, the facts before the Court ordinarily are restricted to facts introduced by the parties through their statements of material facts, which statements must be supported by citations to evidence of record. The requirement that parties cite evidence of record is set forth both in Federal Rule of Civil Procedure 56(c) and in District of Maine Local Rule 56(b) – (d). In addition, Local Rule 56 outlines the manner by which parties must provide the Court with their factual statements and the evidence supporting the statements. Thus, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material fact setting forth each fact in a separately numbered paragraph, followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b), (f). A party opposing a motion for summary judgment must file an opposing statement of material fact that admits, denies, or qualifies the factual statements made by the moving party. D. Me. Loc. R. 56(c). Unless the statement is admitted, the opposing party must provide a citation to evidence of record that supports the opposing statement. *Id.* If a party fails to respond to a statement of material facts, the moving party's factual statements "shall be deemed admitted." D. Me. Loc. R. 56(f). In addition, pursuant to Local Rule 7(b), a party is expected to file an objection to a motion if the party contests the motion, and if the party fails to file an objection, the party is "deemed to have waived objection."

The Court, however, "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7 – 8 (1st Cir. 2002). Instead, the Court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, when the Court has before it a verified complaint, the Court may consider the statements contained therein when assessing whether a genuine issue of fact exists for trial. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007).

Plaintiff was incarcerated in the Department of Corrections from November 6, 2013 – December 21, 2015. (Defendants' Statement of Material Facts ¶ 1.) In 2009, Plaintiff was diagnosed through genetic testing as having a genetic marker for Huntington's disease. (*Id.* ¶¶ 2 – 7.) The Huntington's findings were recorded as "[pre]manifest Huntington's Disease as defined by lack of definitive symptoms in the setting of a positive genetic test… ." (*Id.* ¶ 7.) Defendants Clinton and Stockwell consulted with Plaintiff regarding the diagnosis. (*Id.* ¶¶ 8 – 13.)

During his incarceration, Plaintiff was also provided with outside consultations related to his Huntington's diagnosis. (*Id.* ¶¶ 25 – 28.) The symptoms that Plaintiff believed were the product of Huntington's disease, i.e., headaches, alleged balance issues, depression, forgetfulness, seizures (undocumented), and weight loss,[3] were regularly assessed (including by CT scan and a neurology consultation) and were treated with medication, self-help methods, and a higher calorie diet. (*Id.* ¶¶ 21, 23, 28, 36, 38, 47, 57, 59 – 60, 70 – 84.)[4] Plaintiff reported, however, that his mood, concentration, irritability and depression had not responded to medication. (*Id.* ¶¶ 31, 52, 69.)

As to Plaintiff's alleged Huntington's disease, the record establishes that (1) other than having the genetic marker, Plaintiff has not been diagnosed with Huntington's disease because he does not meet the specific criteria for the diagnosis; (2) no treatment was available that would have reduced the risk that Plaintiff would develop Huntington's disease; and (3) because Plaintiff did

---

The facts set forth herein are derived principally from Defendants' Statement of Material Facts (ECF No. 88), but also include references to Plaintiff's verified complaint.

[3]   Although Plaintiff experienced significant weight loss, Plaintiff maintained a normal or elevated body mass index throughout his term of incarceration and Plaintiff had a negative evaluation for significant causes of weight loss, which loss could have been attributable to depression and Plaintiff's reported habit of exercising frequently. (*Id.* ¶¶ 92 – 94.)

[4]   Plaintiff received a neurological consult in November 2015. (*Id.* ¶ 75.) The consulting physician did not notice much in the way of signs of Huntington's disease at the time. (*Id.* ¶ 78.)

not meet the criteria for the diagnosis of Huntington's disease, he did not require treatment during his incarceration.  (*Id.* ¶¶ 95 – 99.)

Defendants assessed and treated Plaintiff's complaints of migraine headaches.  (*Id.* ¶ 86.)  When Plaintiff was observed by CCS staff, he did not show any signs or symptoms of impairing headaches and regularly went to the gym, to work, and to programs.  (*Id.* ¶ 87.)  In part on this basis, Plaintiff's headaches were determined not to be medically serious.  (*Id.* ¶ 88.) [5]

Plaintiff's reports of back injury and pain did not impact his ability to function as he participated in work, exercised regularly, and moved without evidence of pain or impairment.  (*Id.* ¶ 90.) [6]  Plaintiff received osteopathic treatment for his back pain, was prescribed ibuprofen and Tylenol as needed, and was educated about the appropriate medications for his conditions.  (*Id.* ¶ 91.)

Relevant to Plaintiff's claim regarding his eyeglasses, Plaintiff entered the Correctional Center in November 2013 with his own pair of prescription eyeglasses, which had wire frames.  (*Id.* ¶ 100.)  At the Correctional Center, all inmates who need eyeglass frames wear a standard black plastic frame.  (*Id.* ¶ 101.)  Defendant Riebe asked the Correctional Center staff to permit Plaintiff to use the wire frames and updated prescription lenses with which he arrived at the Correctional Center.  (*Id.* ¶ 102.)  The request was denied for safety and security reasons.  (*Id.* ¶¶ 103, 105, 127, 129.)  Defendant Riebe subsequently secured for Plaintiff renewed prescription lenses in the standard-issue frames permitted at the Correctional Center.  (*Id.* ¶ 106.)  Plaintiff was issued, but from time to time, refused to wear the new glasses.  (*Id.* ¶ 109.)  Plaintiff's concerns

---

[5] A CT scan of Plaintiff's brain was normal and without evidence of serious illness causing his report of headaches.  (*Id.* ¶ 89.)

[6] X-rays of Plaintiff's lumbar spine on July 8, 2014, were normal.  (*Id.* ¶ 90.)

regarding his eyesight were addressed regularly.  (*Id.* ¶ 110.)  The Correct Care Services optometrist adjusted Plaintiff's prescription on three occasions in 18 months, and while incarcerated, Plaintiff signed receipts for three different pairs of standard issue black eyeglass frames with three new prescriptions.  (*Id.* ¶ 111.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'"  *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.  *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015).  If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim.  *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

Through their motion for summary judgment, Defendants maintain the record demonstrates that they were attentive to Plaintiff's medical needs and that the factfinder could not reasonably conclude that Defendants were deliberately indifferent to a serious risk to Plaintiff's health. (Motion for Summary Judgment at 9 – 10.)

Defendants' obligation to Plaintiff regarding medical services is governed by the Due Process Clause of the Fourteenth Amendment. Specifically, the Due Process Clause imposes on the states the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 – 106 (1976)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard evaluates the seriousness of the risk of harm to one's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)).

The subjective standard concerns the culpability of the defendant. There must be evidence that a particular defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

Deliberate indifference must be distinguished from negligence. As the First Circuit explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

While Defendants argue that they are entitled to summary judgment because Plaintiff has not satisfied either the objective or the subjective standard that governs his claim (Motion for Summary Judgment at 9), Defendants principally contend that the record does not contain any evidence that could support the subjective prong of the deliberate indifference standard. (*Id.* at 9 – 10.)

Even assuming, *arguendo*, that the record could support a finding that at least one of Plaintiff's medical conditions was objectively serious, the summary judgment record lacks any evidence upon which a factfinder could reasonably conclude that Defendants were aware of certain medical conditions and failed to address them. The uncontroverted facts establish that Defendants

were responsive to Plaintiff's medical needs and acted appropriately in addressing Plaintiff's needs. For instance, Defendant Reibe arranged for Plaintiff to obtain eyeglasses with his updated prescription. Indeed, Plaintiff received three pairs of eyeglasses in approximately one year.[7] Similarly, the record is undisputed that Defendants Clinton and Stockwell were responsive to Plaintiff's medical needs, treated Plaintiff's medical conditions, and counseled Plaintiff regarding his medical conditions. In short, the record lacks any evidence that Defendants' care of Plaintiff was "so clearly inadequate as to amount to a refusal to provide essential care." *Torraco*, 923 F.2d at 234.

### CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment (ECF No. 87), and enter judgment in favor of Defendants on Plaintiff's complaint.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 1st day of July, 2016.

---

[7] According to Defendant Riebe, Plaintiff signed a receipt for eyeglasses on July 25, 2014, April 21, 2015, and June 18, 2015. (Riebe Affidavit, ¶¶ 15 – 20.)